Joseph K. Powers (Admitted *pro hac vice*)
Andrew T. Houghton (Admitted *pro hac vice*)
Jeffrey W. Dillon (JD 5894)
SEDGWICK LLP
125 Broad Street, 39th Floor
New York, New York 10004-2400
Telephone: (212) 422-0202
Facsimile: (212) 422-0925

Attorneys for Defendants
Westchester Fire Insurance Company and
ACE Westchester Specialty Group

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES MINERAL PRODUCTS COMPANY, d/b/a ISOLATEK INTERNATIONAL,<br><br>Plaintiff,<br><br>v.<br><br>WESTCHESTER FIRE INSURANCE COMPANY and ACE WESTCHESTER SPECIALTY GROUP,<br><br>Defendants | CIVIL ACTION NO.: 11-CV-05280<br><br>The Hon. William J. Martini, U.S.D.J.<br><br>DOCUMENT FILED ELECTRONICALLY |

## CERTIFICATION OF DANIELLE N. BATCHELOR IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S APPLICATION FOR A PRELIMINARY INJUNCTION

I, DANIELLE N. BATCHELOR, of full age, hereby certify as follows:

1. I am employed by Westchester Fire Insurance Company ("WFIC") as a Senior Claims Specialist within the North American Claims Group. In mid April 2011, I assumed responsibility for the handling of the underlying claim against WFIC's insured, United States Mineral Products Company ("USM"), in the matter entitled *Nghia Tran v. United States Mineral Products Company, dba Isolatek International*, pending in the United States District Court for the Central District of California, Case No. EDCV 10-0090 ODW-(ZRx) (the "Underlying Lawsuit"). Upon taking over the handling of the Underlying Lawsuit, I reviewed the claims file for this matter. I am familiar with the facts and circumstances of this matter, and the statements set forth below are based upon my personal knowledge and, where applicable, my review of the claims file.

2. I make this certification in opposition to Plaintiff USM's Application for Preliminary Injunction, filed in the Superior Court of New Jersey, Chancery Division, Sussex County on or about August 24, 2011, and removed to this Court on September 14, 2010. In connection therewith, I have reviewed the certification of Paulette A. Stropnicky, USM's Director of Legal Services, filed in support of USM's Application.

3. I assumed responsibility for the handling of the underlying Tran claim against USM in mid April 2011, after the previous adjuster, Scott Loesch, left WFIC. Based upon my review of the claims file at that point, the assessment of USM's defense counsel in November 2010, including her estimate of potential damages and chances of liability, was that the settlement value of the Tran claim was in the range of $40,000 to $60,000.

4. Based upon my review of the claims file, in November 2010 the parties had attempted to resolve the Underlying Lawsuit through mediation before mediator, Mark Rudy.

However, the mediation was unsuccessful. USM, its defense counsel and the adjuster for WFIC agreed that Trans' settlement demand of $2.25 million was unreasonable. Tran's demand included 15 years of continuing wages, damages for emotional distress and medical expenses related to his Hepatitis B and lymphoma conditions, which Tran alleged were caused or exacerbated by his wrongful termination. Neither USM nor its defense counsel urged or recommended settlement at or anywhere near the amount demanded by Tran. USM, its defense counsel and WFIC assessed the proper settlement value of this case was well below Tran's demands. On March 17, 2011, Tran increased his settlement demand to $2.5 million.

5. Shortly after I assumed responsibility for the Tran claim, on April 29, 2011, USM's defense counsel conducted a mock trial. On May 3, 2011, USM's defense counsel reported that the mock trial was "insightful" and provided "excellent feedback" on the structure of the case and forwarded the trial consulting firm's report regarding the mock trial results to me and to USM's Director of Legal Services, Paulette A. Stropnicky. However, neither USM's defense counsel nor USM itself suggested that the results of the mock trial changed their view of the settlement value of the case or necessitated any deviation from the agreed upon strategy to take the case to trial absent an opportunity to settle at a reasonable value.

6. As of May 3, 2011, Tran's settlement demand continued to stand in excess of $2 million and USM, its defense counsel and WFIC had decided that taking the matter to trial, which was initially scheduled for May 17, 2011 and later continued until May 25, 2011, was preferable to meeting Tran's excessive demand. Defense counsel had informed me that it expected the trial to last approximately two weeks.

7. On Thursday, May 19, 2011, the mediator contacted defense counsel for USM to indicate that he believed that it would take between $750,000 to $800,000 to settle the case. Contrary to Ms. Stropnicky's characterization in her certification, the mediator did not state that "he believed the matter could now be settled at a fraction of the amount demanded by the Tran Plaintiff in the mediation." The mediator said he advised Tran's counsel that the case would not settle at the figures presented at the mediation and that USM's position had not changed from a "low 6 figure number." He concluded by stating that it seemed to him it would take close to $800,000 or $750,000 to settle the case. USM's defense counsel concluded her email reporting the communication from the mediator by stating her view that USM's position was unchanged. The next day I emailed both defense counsel and Ms. Stropnicky, acknowledging defense counsel's email and confirming the adjournment of the trial to May 25.

8. On Friday, May 20, 2011 at 3:54 p.m., the mediator contacted defense counsel for USM to convey a settlement demand from Tran of $950,000. USM's defense counsel forwarded this offer to me at 7:06 p.m. on Friday night and recommended a conference call on Monday, May 23, 2011 to discuss a response to the offer. USM did not object to discussing the offer on May 23rd and neither USM nor its defense counsel recommended accepting Tran's settlement offer or expressed a sense of urgency to reach a settlement. I replied on Monday morning at 9:07 a.m. that I would be available for a conference call after 3:00 p.m. EST. Ms. Stropnicky replied thereafter that she was available as well.

9. On a conference call on the afternoon of May 23, 2011, Ms. Stropnicky, USM's defense counsel and I agreed to make a counteroffer to Tran, which would, in effect, reject Tran's offer $950,000. In accordance with the valuation of the case shared by USM, its defense counsel

4

and WFIC, we discussed making a counteroffer of $300,000. I informed the parties on the call that I would have to obtain approval to make a settlement offer of that amount. Contrary to the statement in Ms. Stropnicky's Certification, I do not recall her "imploring" me, at this time, to obtain approval of the proposed settlement amount immediately. During the conference call, there was no urgency expressed by Ms. Stropnicky. Also, I do not recall any discussion of a potential punitive damage award based upon the mock trial report.

10.  On May 24, 2011 and again on May 25, 2011, I informed Ms. Stropnicky and USM's defense counsel that I was continuing to work diligently on obtaining the settlement authority discussed in the previous day's telephone conference, which required obtaining an increase in the claim reserve.

11.  On May 25, 2011, the trial of the Underlying Lawsuit began. On that same day, I received a letter, via email, from outside counsel for USM, Steven Weisman of McCarter & English, arguing that WFIC's refusal to approve a settlement offer at $300,000 less than two days after we had discussed the number constituted bad faith under *Rova Farms Resort, Inc. v. Investors Ins. Co. of America*, 65 N.J. 474 (1974). Although Mr. Weisman's letter of May 25, 2011 demanded that WFIC resolve the Underlying Lawsuit for an amount within limits, neither Mr. Weisman, USM, nor its defense counsel demanded, recommended or even suggested that a settlement offer greater than $300,000 was warranted at that time. Furthermore, there was nothing in the daily trial reports forwarded by USM's defense counsel through Friday, May 27 to suggest that the trial was going badly for USM.

12.  On Friday, May 27, 2011, I obtained the requested authority to extend the $300,000 offer, and at approximately 2:08 p.m. (California time), I informed USM's defense

counsel that she had the authority to extend the offer. However, by that afternoon, Mr. Weisman was already taking the position in an e-mail to me that WFIC's failure to approve settlement authority *at $300,000* constituted a breach of fiduciary duty and the covenant of good faith and fair dealing, resulting in an expansion of coverage under the WFIC Policy to include punitive damages. On May 27, Mr. Weisman never suggested that an offer of $300,000 was no longer reasonable or that any increase in the settlement offer was warranted.

13. On Tuesday morning, May 31, 2011, I received defense counsel's trial report regarding the proceedings that had taken place on Friday, May 27, 2011. The report indicated that, based upon developments during the first three days of the trial, defense counsel did not believe Tran would engage in further settlement discussions. It was not until this report that USM warned that the case was not going well for USM as a result of the testimony of Giovanni Pacheco.

14. The trial resumed on Tuesday, May 31, 2011, after a three-day weekend for the Memorial Day Holiday. According to an email I received from USM's defense counsel, it was not until that morning that they relayed the settlement offer of $300,000 to Tran's counsel. According to USM's defense counsel, Tran's counsel flatly rejected the offer and stated that Tran "may consider" a demand of $950,000. On May 31, 2011, USM's defense counsel also informed me that only four witnesses remained to testify and that the trial should close on June 1, 2011, well before her initial two-week estimate.

15. On June 1, 2011, I asked USM's defense counsel for her recommendations concerning a response to Tran's rejection of the $300,000 settlement offer and apparent reinstatement of Tran's $950,000 demand. In response USM's defense counsel did not advise

6

WFIC to offer Tran $950,000, the amount of his last articulated offer, but rather suggested a responsive offer of $800,000.

16.  Later on June 1, 2011, WFIC approved a settlement offer of $750,000, which USM's defense counsel conveyed to Tran that same day. Tran immediately responded with a counter-demand of $1,950,000. Tran's final offer was far in excess of any valuation of the Underlying Lawsuit up to that date, including defense counsel's valuation earlier that same day, which suggested a reasonable settlement value of $800,000.

17.  The jury returned a verdict on June 2, 2011 of $1,417,993 in economic and emotional distress damages and $4 million in punitive damages. Nothing in the prior analysis conducted in preparation for trial suggested that the case posed a risk of such a verdict.

18.  Shortly after the jury rendered its verdict, outside counsel for USM contacted WFIC demanding that WFIC pay the premium on and collateralize the full amount of the bond necessary to stay the entire judgment during USM's appeal, including the portion of the bond pertaining to the punitive damages verdict. USM's counsel claimed that WFIC was required to post the full amount of the bond, despite clear policy provisions limiting WFIC's obligations to pay "the premium for appeal ... bonds arising out of covered judgments, but with no obligation to furnish such bonds." USM theorized that this obligation arose from WFIC's alleged bad faith failure to settle the Underlying Lawsuit within the limits of the WFIC Policy. WFIC rejected these contentions and confirmed that, consistent with its obligations under the WFIC Policy and applicable law, it would provide the appeal bond necessary to secure that portion of the judgment related to the non-punitive damages awarded by the jury.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the above statements are true and correct.

Dated: Jersey City, New Jersey
        October 12, 2011

*Danielle Batchelor*
Danielle N. Batchelor